RECEIPT # 64409
AMOUNT $ 250
SUMMONS ISSUED N/A
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. B
DATE 5-24-05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BEVERLY A. GEORGE, Plaintiff, v. AT&T CORPORATION, Defendant. | Civil Action No. ____________ **NOTICE OF REMOVAL** |

05 CV 11079 DPW

TO: The Honorable Judges of the United States District Court District of Massachusetts

MAGISTRATE JUDGE Bowler

Petitioner, AT&T Corporation (hereinafter "Defendant" or "AT&T"), Defendant in the above entitled action, states:

1. Defendant desires to exercise its rights under the provisions of 28 U.S.C. § 1441, *et seq.*, to remove this action from the Superior Court for Norfolk County, Dedham, Massachusetts, in which said cause is now pending under the name and style, *Beverly A. George, Plaintiff v. AT&T Corporation, Defendant*, Civil Action No. 05-00715. Defendant AT&T was served a Summons and a copy of a Complaint in this action on or about April 29, 2005. A copy of the Summons, Complaint, and Cover Sheet are attached hereto as Exhibit A. No other papers were served in this matter.

2. The above described action is one of which this court has original jurisdiction under 28 U.S.C. § 1332 and is one which may be removed to this court by Defendants pursuant to the provisions of 28 U.S.C. § 1441.

a. Diversity of Citizenship: The parties to this action are citizens of different states, and accordingly, there is diversity of citizenship.

i. Plaintiff Beverly A. George is an individual resident of the State of Massachusetts. *See* Complaint at ¶ 1.

ii. Defendant AT&T Corporation is a New York corporation with its principal place of business in New York.

b. Amount in Controversy: The amount in controversy in this action is $83,700.00 exclusive of interest, fees, and costs which exceeds the monetary threshold of $75,000 as set forth under 42 U.S.C. § 1332(a). *See* Complaint at cover sheet.

3. Defendant is filing this notice within thirty (30) days of service of the Summons and Complaint, as required by 28 U.S.C. § 1446.

4. Defendant will file a Notice of Filing of Removal of Action to Federal Court and a copy of this Notice of Removal with the Clerk, Superior Court for Norfolk County, 650 High Street, Dedham, Massachusetts 02026, pursuant to 28 U.S.C. § 1446(d), a copy of which is attached hereto as Exhibit B.

5. Defendant will serve written Notice to Opposing Counsel of Removal of Action to Federal Court, and copies of this Notice of Removal on opposing counsel pursuant to 28 U.S.C. § 1446(d), a copy of which is attached hereto as Exhibit C.

WHEREFORE, Defendant AT&T Corporation prays that the above action now pending against it in the Superior Court for Norfolk County, Dedham, Massachusetts be removed therefrom to this Court.

Respectfully submitted,

AT&T CORPORATION,

By its attorneys

Nathan L. Kaitz (BBO No. 252760)
Leah M. Moore (BBO No. 658217)
MORGAN, BROWN & JOY, LLP
200 State Street
Boston, Massachusetts 02109
(617) 523-6666

Date: May 24, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon counsel for Plaintiff, Blake J. Godbout, Esq., Blake J. Godbout & Associates, 33 Broad Street, 11th Floor, Boston, MA 02109, by first-class mail this 24th day of May 2005.

Nathan L. Kaitz

(TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED:- TORT - MOTOR VEHICLE TORT - CONTRACT - EQUITABLE RELIEF - OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION

NO. 05 00715

AT&T
RECEIVED
MAY 0 2 2005
LAW DEPT.

BEVERLY A. GEORGE, *Plaintiff(s)*

v.

AT & T CORP., *Defendant(s)*

## SUMMONS

To the above-named Defendant: AT & T CORP.

You are hereby summoned and required to serve upon David A. Conti, Esq., plaintiff's attorney, whose address is 33 Broad Street, Boston, MA 02109, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Dedham either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

WITNESS, ~~SUZANNE V. DELVECCHIO, *Esquire*~~, BARBARA J. ROUSE, Esquire, at .......... the 27th day of April, in the year of our Lord two thousand and 5

DATE OF SERVICE
4-29 2005

TRUE COPY ATTEST
D. H. Sullivan
CONSTABLE

Walter F. Timilty, Clerk.

NOTES:

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

F-88

**CIVIL ACTION COVER SHEET**

DOCKET NO.(S)

**Trial Court of Massachusetts**
**Superior Court Department**
**County:** NORFOLK

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| BEVERLY A. GEORGE | AT&T CORP. |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>David A. Conti - Blake J. Godbout & Associates<br>33 Broad Street, Boston, MA 02109<br>Board of Bar Overseers number: | ATTORNEY (if known)<br>unknown |

**Origin code and track designation**

Place an x in one box only:

- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B99 | Misrepresentation | ( F ) | ( x ) Yes ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . $ . . . . . . . . . .
2. Total Doctor expenses . . . . . . . . . . $ . . . . . . . . . .
3. Total chiropractic expenses . . . . . . . . . . $ . . . . . . . . . .
4. Total physical therapy expenses . . . . . . . . . . $ . . . . . . . . . .
5. Total other expenses (describe) . . . . . . . . . . $ . . . . . . . . . .

**Subtotal $** . . . . . . . . . .

B. Documented lost wages and compensation to date . . . . . . . . . . $83,700.00

C. Documented property damages to date . . . . . . . . . . $ . . . . . . . . . .

D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . $ . . . . . . . . . .

E. Reasonably anticipated lost wages . . . . . . . . . . $ . . . . . . . . . .

F. Other documented items of damages (describe)

$ . . . . . . . . . .

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

Defendant, through its agents, did intentionally and negligently misrepresent material facts to Plaintiff which induced her to accept early retirement after thirty years of employment. Defendant subsequently closed the Call Center where Plaintiff worked, granting employees severance

$ . . . . . . . . . .

**TOTAL** $83,700.00.

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

**TOTAL $.** . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record [signature] DATE: 4-21-0

COMMONWEALTH OF MASSACHUSETTS

AT&T RECEIVED MAY 0 2 2005 LAW DEPT.

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION NO:

BEVERLY A. GEORGE

Plaintiff,

v.

AT&T CORP.

Defendant.

**COMPLAINT WITH JURY CLAIM**

**PARTIES**

1. The Plaintiff, Beverly A. George (hereinafter referred to as "Plaintiff") is an individual who resides at 7 Willow Street, Foxborough, Norfolk County, Massachusetts 02035.

2. The Defendant, AT&T Corp. (hereinafter referred to as "Defendant"), is a for profit corporation organized under the laws of the state of New York with a principal place of business at 32 Avenue of the Americas, New York, New York 10013.

**FACTUAL BACKGROUND**

3. In 1970, Defendant hired Plaintiff as a part-time/full-time employee in Defendant's Operator Services Department at their Walpole, Massachusetts, facility.

4. In or about 1977, Plaintiff returned to her employment with Defendant following a two (2) year maternity leave, resuming her duties in Defendant's Operator Services Department at

Defendant's Brockton, Massachusetts, facility.

5. In or about 1990, Defendant transferred Plaintiff to the Operator Services Department at Defendant's Worcester, Massachusetts, facility. In 1993, Defendant closed the Worcester facility and transferred Plaintiff to a facility in Peabody, Massachusetts.

6. In or about 1996, after closing the Peabody facility Defendant transferred Plaintiff to the Relay Center at Defendant's Providence, Rhode Island, facility.

7. Later in 1996, approximately three (3) months after transferring Plaintiff to the Providence facility, Defendant transferred Plaintiff to Fairhaven, Massachusetts, as a Customer Sales and Service Representative (hereinafter "CCA").

8. From 1996 until 2004, Plaintiff worked as a CCA at the Fairhaven Call Center, located at 200 Mill Road, Fairhaven, Bristol County, Massachusetts (hereinafter referred to as the "Fairhaven Facility").

9. On or about April 24, 2003, in response to rumors relative to the closing or downsizing of the Fairhaven Facility, Mrs. Joan Capuccio, Region Director for the Fairhaven Facility (hereinafter referred to as "Mrs. Capuccio"), distributed a memorandum denying the rumor and asking for information on those persons responsible for originating it. See Exhibit A attached hereto.

10.  Between April, 2003, and September, 2004, Defendant, the record owner of the property housing the Fairhaven facility, began negotiations to sell the Fairhaven Facility and property for Three Million One Hundred Thousand Dollars ($3,100,000.00) to Mill Bridge Holdings, LLC.

11.  Upon information and belief, the proposed sale contemplated and was contingent upon Defendant signing a five (5) year lease to continue operations at the Fairhaven Facility.

12.  In March, 2004, the United States Court of Appeals for the District of Columbia, issued a ruling allowing the Federal Communications Commission ("FCC") Rules governing competition in the phone industry to expire.

13.  Defendant, through spokeswoman Claudia Jones and others, announced prior to the March, 2004, ruling that it would stop offering local service in some regions if the regulations lapsed in June, 2004.  See Exhibit B, page 2.

14.  Plaintiff, who had yet to fully commit to retiring from her position with Defendant, was approached in late May, 2004, to conduct her exit interview, which is customarily done within a few days of the exit date or the day of the exit date.

15.  On or about June 15, 2004, Defendant issued a press release concerning the FCC Regulations and announcing the United State Supreme Court decision allowing the FCC Regulations to lapse.  See Exhibit B.

16.   In June, 2004, Barbara Gillooley, Fairhaven Facility's Sales Processing Manager; John Polumbo, president of Defendant's Consumer Division; and other leadership teams from Defendant's NJ offices (hereinafter referred to as "HQ Managers") arrived at the Fairhaven Facility under the auspices of rolling out a "Strategic Selling" program.

17.   Plaintiff inquired of an HQ Manager whether the "Strategic Selling" program was really a disguise to assess which offices to close or downsize.  The HQ Manager replied "No."

18.   Plaintiff, concerned that the Fairhaven Facility would downsize or close as a result of the federal court rulings discussed in Defendant's June 15, 2004, newsletter, repeatedly inquired of her manger, Mary C. Eustace (hereinafter "Ms. Eustace"), if the Fairhaven facility was downsizing or closing. Ms. Eustace consistently replied "No".

19.   Under the Collective Bargaining Agreement ("CBA") between Defendant and Plaintiff's union, Communication Workers of America Local 1051 (hereinafter referred to as "CWA"), such a closing or downsizing of the Fairhaven Facility would entitle employees to a severance package for accepting early retirement.

20.   Ms. Eustace, knowing Plaintiff to be contemplating retirement, repeatedly inquired whether Plaintiff had requested her retirement package throughout June, 2004.

21.   In July, 2004, prior to filling out her retirement package, Plaintiff went to Mrs. Cappuccio and relayed her

concerns relative to Fairhaven's downsizing or closing as a result of the June, 2004, Supreme Court Decision.  Mrs. Cappuccio replied "No, AT&T Fairhaven has sold the office and the new owner has signed a five (5) year lease with AT&T and we will still provide customer service for our present customers."

22.  In reliance upon the assurances from the HQ managers, her immediate manager Mrs. Eustace, and Regional Director Mrs. Cappuccio, Plaintiff filled out her retirement package on July 10, 2004.  At the time of her retirement, Plaintiff's weekly income totaled Eight Hundred Thirty Seven Dollars ($837.00).

23.  On July 16, 2004, Plaintiff had her Thirtieth (30th) Anniversary Luncheon.  During the luncheon Plaintiff, still concerned that she would be precluded from the severance package in the event the Fairhaven Facility downsized or closed, inquired of Chris Giblin, PDL Manager, and Sharon Pereira, her former manager, as to the status or fate of the Fairhaven Facility.  Chris Giblin responded, "I want to congratulate you on your thirty years of service, I know I'll never see mine."

24.  On or about September 2, 2004, Defendant completed the sale of the Fairhaven Facility to Mill Bridge Holdings, LLC.

25.  On or about September 14, 2004, Defendant announced that as a result of the March, 2004, U.S. Appeals Court decision, they would stop pursuing new residential customers.

26.  As a direct result of the Court rulings, and in accordance with Defendant's earlier representations in the media

and elsewhere, Defendant laid off approximately one-half (1/2) of the CWA employees at the Fairhaven Facility, providing all such employees with an early retirement severance package of approximately One Hundred (100) weeks of pay. See Exhibit C.

**COUNT I - INTENTIONAL MISREPRESENTATION**

27. The Plaintiff, Beverly A. George, repeats and realleges Paragraphs One (1) through Twenty-Six (26) of this Complaint as if fully set forth herein.

28. The Defendant did, through its agents and employees, make false statements of material fact, as described hereinabove, to Plaintiff relative to the fate of the Fairhaven Facility.

29. Defendants false statements of material fact were an important factor in Plaintiff's decision to accept early retirement after her thirty (30) years of service in Defendant's employ.

30. Defendant, through its agents, made false statements of fact with knowledge of the statements' falsity or recklessly made the statements by willfully disregarding the statements' truth or falsity.

31. Defendant, through its agents, made the false statements with the intention that Plaintiff would rely on them in making her decision whether to accept early retirement or remain in Defendant's employ.

32. In making her decision to accept early retirement, Plaintiff relied on the Defendant's statements as true and her

reliance was reasonable under the circumstances.

33. As a result of Plaintiff's reliance on Defendant's statements, she has suffered financial harm, including but not limited to, loss of the severance package and lower pension benefit payments.

WHEREFORE, Plaintiff Beverly A. George demands judgment against Defendant AT&T Corp. together with interest and costs of this action.

**COUNT II - NEGLIGENT MISREPRESENTATION**

34. The Plaintiff, Beverly A. George, repeats and realleges the allegations contained in Paragraphs One (1) through Thirty-Three (33) as is fully set forth herein.

35. As discussed hereinabove, the Defendant, through its agents and employees, did make false statements of material fact to Plaintiff relative to the fate of the Fairhaven Facility.

36. Defendant's false statements of fact were of such a nature that Plaintiff would reasonably consider them important in making her decision whether to accept early retirement from Defendant's employ.

37. Defendant, through its agents, negligently failed to determine whether the material statements of fact were true or false.

38. Defendant, through its agents, failed to use the amount of care that a reasonable person would use under the circumstances to determine the truth or falsity of the

statements.

39.   Defendant and its agents made the false statements of material fact with the intention that Plaintiff would rely on the statements in making her decision.

40.   In making her decision to accept early retirement, Plaintiff did in fact rely on the Defendant and its agents statements as true, such reliance being reasonable under the circumstances.

41.   As a result of Plaintiff's reasonable reliance on Defendant's false statements of material fact, Plaintiff has suffered financial loss, including but not limited to, loss of the severance package and lower pension benefit payments.

WHEREFORE, the Plaintiff Beverly A. George demands judgment against the Defendant AT&T Corp. together with interest and costs of this action.

**THE PLAINTIFF BEVERLY A. GEORGE DEMANDS A TRIAL BY JURY ON ALL COUNTS OF THIS ACTION.**

Respectfully submitted,

**BEVERLY A. GEORGE,**
By her attorneys,

Blake J. Godbout (BBO#196380)
David A. Conti (BBO#661419
**BLAKE J. GODBOUT & ASSOCIATES**
33 Broad Street, 11th Floor
Boston, MA 02109
(617) 523-6677

Dated: April 21, 2005

# Exhibit A

Requested by: bgeorge
Date : 04/24/03
Time : 09:08:11

AT&T

Mail Inbox

| From | Subject | Sent Date/Time | Type |
| --- | --- | --- | --- |
| ekramer | Message from Joan | 04/24/03 08:18am EDT | mail |

To All Employees,

The rumors in regards to Fairhaven closing are NOT TRUE! We are having visitors to the site tomorrow to celebrate our Winning Spirit event. There will be NO closing announcements. If you have any information concerning the origin of this rumor please share with your managers so we can put a stop to this falsehood.

Joan Cappuccio
Region Director

AT&T Proprietary
Use pursuant to company instructio

# Exhibit B



AT&T Retiree Site

Page 1 of 4

att.com At Home & On the Go Small & Medium Business Enterprise Business

AT&T The world's networking company

SEARCH

Home | Suggestions | Help/FAQ | Sitemap

BENEFITS

COMMUNITY INVOLVEMENT

GOVERNMENT ORGANIZATIONS

NEWS & INFORMATION

FINANCIAL & INVESTMENT

Back to News & Information

# AT&T TODAY

**TUESDAY, JUNE 15, 2004 2 p.m. EDT**

**AT&T STOCK WATCH (Mondays close) ***** T 15.95; -.40

**AT&T ANNOUNCES *** AT&T WINS TELECOM ASIA "BEST MANAGED SERVICES CARRIER" 2004 AWARD** AT&T received the Telecom Asia Award of "Best Managed Services Carrier" in the Asia-Pacific region. A distinguished panel of 10 judges, including telecom analysts, telecom user groups, industry experts and Telecom Asia's editorial team, voted for the award winners. The judging criteria for the Telecom Asia Award -- one of the industry's most prestigious regional awards -- were based on three elements: financial performance; innovation and leadership; and corporate governance. The selection of award winners was based in part on an analysis by one of the world's premier telecom research houses, the Yankee Group.

For the complete news release, go to the AT&T Newsroom at http://www.att.com/news/.

[AT&T TODAY publishes excerpts from selected news items to inform employees and retirees about AT&T in the news worldwide. Publication of a news clip is not an endorsement of its viewpoint or accuracy. All news sources are today's date unless otherwise noted.]

**AT&T AND INDUSTRY NEWS *** AT&T CALLVANTAGE SERVICE ROLLS OUT IN FLORIDA** [Southwest Florida Herald-Tribune, online, 6/14.] AT&T is launching voice over Internet protocol [VoIP] phone service for 10 Florida markets. The service allows users to make and receive phone calls over a high-speed Internet connection. It is AT&Ts first overture to the Sarasota area, which has lost out to more populated areas such as Tampa and Miami when alternative carriers decide where to compete for local customers. In light of recent regulatory decisions, VoIP may turn out to be a more cost-effective way for carriers such as AT&T to enter new markets. [Tampa Bay Business Journal, online, 6/14.] AT&T announced [yesterday] the expansion of its [AT&T] CallVantage Service to 10 major Florida markets including Lakeland-Winter Haven, Sarasota-Bradenton and Tampa-St. Petersburg. [AT&T] CallVantage [Service] is a residential voice over Internet protocol [service] that requires a customer to have a high-speed Internet connection to the home.

June 14, 2004

**SUPREME COURT ALLOWS PHONE RULES TO EXPIRE** [Washington



Post, E5.] The U.S. Supreme Court declined yesterday to stop the government from discarding a set of rules that forced regional phone companies to lease their networks to rivals at deep discounts. [AT&T] was one of more than two dozen phone companies that had asked Supreme Court Justice William H. Rehnquist on Thursday to keep the rules on the books while they appeal a lower court's finding that the regulations were improper. AT&T and the other phone companies say they depend on the rules to offer local phone service in regions where they must compete with giants such as Verizon and BellSouth. The Supreme Court's decision is not surprising given the Bush Administration decision to abandon the litigation, said AT&T spokeswoman Claudia Jones in a statement e-mailed to reporters. This confirms that the Administration has set the industry on a path to higher prices, less competition, fewer jobs and depressed investment. AT&T and other competitors say the prospect of rate increases will hinder their ability to market the service to new customers and they hinted they may highlight the issue in states key to deciding the presidential election. Once the current rules expire, the major phone companies still must seek the approval of state regulators before they raise rates. There is no deadline on the states to complete their review of the rate hikes, an FCC [Federal Communications Commission] official said yesterday. In the meantime, AT&T and the other competitors say they will continue to seek a Supreme Court review of the appeals courts ruling. [Print and wire coverage elsewhere.]

**SPECULATION: RULING MAY FORCE AT&T TO STOP OFFERING LOCAL SERVICE IN SOME MARKETS** [The Wall Street Journal, B6.] AT&T [reportedly may] announce soon it will stop offering local service in some states in the wake of a court decision that becomes effective today. The ruling strikes down government competition rules that control wholesale rates charged to AT&T by the regional Bell companies. AT&T [may] stop offering service in these states, a person familiar with the matter said, even though the Bells have sent the FCC letters promising they won't raise wholesale rates until the end of the year. The company has warned in the past that it would stop offering local service in some regions if price increases make its margins too slim. AT&T is also reluctant to rely on promises from the Bells rather than actual government policy.

**RULING LEAVES RATE UNCERTAINTY FOR CONSUMERS AND COMPANIES** [The New York Times, C4.] The decision by the Bush administration last week to side with the regional Bell companies in their legal fight over the access fees they charge others to lease their phone lines has set off alarm bells among consumer groups, long-distance providers and state utility commissions. The groups say that an appeals court decision to remove the cap on these access fees, which goes into effect today, will give the Bells a free hand to raise the prices they charge AT&T, MCI and hundreds of other companies trying to get into the local phone market. It will also push many smaller phone companies out of business, they say, and ultimately lead to higher phone rates for consumers. But most analysts say that if and when they start charging higher fees, the Bells are unlikely to raise rates by more than 30 percent. Anything higher would be viewed as politically unpalatable and probably push long-distance companies to move even faster to use new phone technology, like Internet calling services, that bypass the Bells networks altogether. Long-distance providers contend that total customers aside, their mere presence in the local phone market keeps pressure on the Bells



to maintain service at reasonable prices.

**FCC CANNOT PRE-EMPT STATE EFFORTS IN BROADBAND REGULATION, AT&T SAYS** [TR Daily, online, 6/14.] The Telecommunications Act of 1996 bars the FCC from pre-empting state efforts to stop incumbent telcos from cutting off broadband service to end-users who switch service providers, AT&T has told the Commission. In a letter opposing a BellSouth petition for a declaratory ruling pre-empting state commissions in this area, AT&T said the FCC must meet traditional pre-emption standards, which allow pre-emption only where, and to the extent that, state regulation so conflicts with federal requirements that it negates the exercise of federal powers. BellSouth had asked for a declaratory ruling that state commissions may not regulate broadband Internet access service by requiring the incumbent telco to provide wholesale or retail broadband service. AT&T also reiterated its argument in previous filings that the state broadband requirements at question do not establish unbundling obligations or implicate the Commission's unbundling regulations or determinations.

**SENATE TO TAKE UP VOIP LEGISLATION** [CNET News.com, online, 6/14.] The U.S. Senate [tomorrow] is scheduled to begin hearings on Internet telephone services, in what could be the first step toward banning state governments from regulating the fast-growing technology. Under discussion during the hearing will be a proposal introduced in April that would flatly ban state regulators from monkeying around with voice over Internet protocol services. The bill, called the VoIP Regulatory Freedom Act, says regulatory authority is reserved solely to the federal government. The proposal is aimed at heading off state officials, who are eyeing VoIP companies as potentially lucrative taxing opportunities. The bill protects consumers by ensuring that this new service won't be taxed at the state level, Sen. John Sununu said on the Senate floor when introducing the federal bill in April. Everyone knows the more you tax something, the less you get. If you want to discourage investment, innovation and capital from moving into important new services like this, then raise the taxes and discourage that investment. The Justice Department and FBI are keenly interested in wiretapping VoIP calls. The Sununu bill says that VoIP companies that provide links to the existing telephone network must provide some access to necessary information to law enforcement agencies.

**OTHER STOCKS TO WATCH (Mondays close) *** AWE** 14.30, -.03; **BellSouth** 25.70, -.31; **Comcast** 28.82, -.79; **IBM** 90.07, -.39; **Qwest** 3.60, -.06; **SBC** 24.55, -.26; **Sprint** 17.60, -.20; **Verizon** 36.01, -.25; **Vodafone** 23.21, -.54; **Dow Jones** 10,334.73, -75.37; **NASDAQ** 1,969.99, -29.88; **S&P 500** 1,125.29, -11.18 *Prices quoted are American Depository Receipts

**QUOTE OF THE DAY To accomplish great things, we must not only act, but also dream; not only plan, but also believe.** Anatole France, author

OUR COMMON BOND

# Exhibit C

SPORTS

A NEW RACE

Steve Britt and Todd Baptista debate the merits of NASCAR's new "Chase for the Championship." C1

NEWS

Ivan's fury

As Ivan punishes Cuba, the Gulf Coast braces for a possible onslaught. A2

The Standard-Times

SERVING THE SOUTHCOAST COMMUNITY

TUESDAY, September 14, 2004

SouthCoastToday.com

New Bedford, Mass.

City Final: 50 cents

# 140 Fairhaven AT&T workers axed

## Call center employees to lose jobs by Nov. 19

By DAVID J. ORTIZ
Standard-Times staff writer

FAIRHAVEN — Almost half of the employees at AT&T's call center on Bridge Street will be laid off this fall after the company decided to abandon its pursuit of new residential customers.

One hundred forty workers will lose their jobs at the telecommunication company's Fairhaven customer service facility, said Linda Teoli, president of the Communications Workers of America Union Local 1051.

Those being laid off include 130 account representatives and 10 clerical staff. They will all be taken off AT&T's payroll by Nov. 19, Ms. Teoli said.

Approximately 200 employees with more seniority are keeping their jobs at the call center, Ms. Teoli said.

AT&T officials informed the union of the layoffs yesterday. During group meetings later in the afternoon, the workers who will lose their jobs were told, Ms. Teoli said.

"People are devastated. It was a surprise to everybody," Ms. Teoli said. "There were some tears shed, and people just wondering what they're going to do."

Several employees exiting the call center yesterday evening declined to comment. Eventually, an AT&T manager who did not give her name asked a reporter to leave the property.

Officials for both the company and the union declined to discuss severance packages received by those losing their jobs except to say that severance pay and other benefits are being given based on seniority.

Those being laid off had the least amount of seniority at the

See AT&T A5

FROM PAGE ONE

# AT&T: 140 Fairhaven workers axed

CONTINUED FROM A1 [illegible] call center, Ms. Teoli said. [illegible] AT&T officials informed [illegible] union of the layoffs yesterday [illegible] during group meetings late [illegible] the afternoon. The workers who will lose their jobs [illegible] Teoli [illegible]

"People are devastated. It was a surprise to everybody," Ms. Teoli said. "There were some tears shed, and people just wondering what they're going to do." [illegible]

Several employees exiting the call center yesterday evening declined to comment. Eventually an AT&T manager who did not give her name asked a reporter to leave the property.

Officials for both the company and the union declined to discuss severance packages [illegible] ceived by those losing their jobs, except to say that severance pay and other benefits are being given based on seniority. [illegible]

Those being laid off had the least amount of seniority at the call center, Ms. Teoli said. [illegible] "They did it from the bottom up," she said. "The people that are leaving have six, seven years [illegible]

Speculation that jobs would [illegible] be lost at the Fairhaven call center [illegible] was stoked recently when [illegible] New Bedford real estate developer Paul Downey announced [illegible] he had purchased the AT&T building and 60 acres surrounding it for $3.3 million [illegible] AT&T plans to lease one floor from the new owner, a company spokesman told the Standard-Times on Sept. 3. Mr. Downey will lease the remainder of the building as office space, he said.

Employees at the call center have waited to find out their fate since AT&T announced July 22 [illegible] that it would quit pursuing new residential customers who use the company's local and long-distance telephone services. The decision would result in a major layoff of employees who work with residential customers and provide other consumer services, the company warned.

AT&T decided to abandon the consumer market following a judge's decision in March to allow states to make regional phone companies lease parts of their networks at deep discounts to long-distance companies for local service.

The ruling made competing for local telephone customers unprofitable for AT&T in the long run, AT&T officials said. Instead, the company will focus on expanding in the business and emerging technology markets, AT&T said.

Part of the reason for this action has to do with the regulatory setback and the decision to pull out of consumer market," AT&T spokesman Andrew Backover said yesterday. "Beyond that we've been transforming the cost structure of the company for a while now — automating, streamlining and reducing cost across the board — because it is such a competitive industry. Obviously, these are very hard decisions."

Despite the massive layoff, many local AT&T employees fared better than their counterparts at a similar call center in Charleston, W.Va. AT&T announced it is entirely shutting down the call facility, the company announced yesterday.

As many as 275 employees will lose their jobs when the call center closes on Nov. 19, local news outlets reported yesterday.

West Virginia's two U.S. senators, Jay Rockefeller and Robert C. Byrd, and Charleston Mayor Danny Jones said they would try to prevent AT&T from closing the call center and criticized the Bush administration for failing to appeal the court ruling, the local CBS news affiliate reported.

# Fonseca: City man killed in boat explosion

CONTINUED FROM A1 [illegible] nephew then got in touch with a state trooper who offered greater details of the accident, Ms. Fonseca added. [illegible]

The trooper would not provide any additional information about the accident when reached last evening.

Capt. Larry Clossom, who was piloting the ferry Portuguese Princess between Martha's Vineyard and New Bedford, saw the [illegible]

The Coast Guard dispatched two boats to the scene from its Woods Hole and Menemsha stations, along with a rescue helicopter from its Cape Cod air station.

Mr. Fonseca was taken to the emergency medical services facility at the Wood's Hole station.

Mr. Fonseca's boat was a wooden, home-built, lobster-style boat with an inboard motor, meaning that the vessel resem- [illegible] traps, his family said.

Last night Mr. Fonseca's family members gathered at the split-level house he shared with his sister Ernestine in New Bedford's South End.

The family remembered him as a loner who acted like a hermit, Ms. Fonseca said.

Mr. Fonseca never married or had any children. The gray split-level he shared with his sister was the same house [illegible]

[illegible] cially, baseball, and basketball. One of the highlights of his military career, Ms. Fonseca said, was serving as the manager of the SS United States' baseball team.

When Mr. Fonseca retired, his life was his home and his boat, Ms. Fonseca added.

In addition to his sister Ernestine, Mr. Fonseca's survivors include one sister and one brother.

# Powell, Ridge endorse new spy chief post

By JESSE J. HOLLAND
Associated Press writer

WASHINGTON — Homeland Security Secretary Tom Ridge and Secretary of State Colin Powell endorsed the idea yesterday of a new national intelligence director with budget authority over the nation's nonmilitary intelligence agencies, noting that authority comes with the power to control money.

"In this town, it's the ultimate command and control," said Ridge, who was denied budget authority over other security agencies when Congress created his department after the Sept. 11 attacks.

Powell also endorsed President Bush's suggestion that he, Ridge and other top officials sit on a Cabinet-level joint intelligence council to advise the intelligence director. He said he envisioned its work as similar to the military's Joint Chiefs of Staff, where heads of the military branches sit together to decide the armed forces' needs as a whole.

"We got the best advice using that kind of technique," said Powell, a former Army general [illegible]

[illegible] are working out how that chamber will deal with the commission's legislative recommendations.

The 9/11 commission complained that poor coordination by the 15 intelligence agencies caused failures that, had they not occurred, might have prevented the Sept. 11 hijackings and attacks on New York City and Washington. Among its suggestions to fix the situation was appointing an intelligence director with the power to control spending and to hire and fire.

Bush suggested last week that Congress create a national intelligence director to control only the nonmilitary intelligence agencies and give that person budgetary authority over those agencies but only limited personnel authority. He also suggested the Cabinet-level council but said the intelligence director should not sit in the president's cabinet.

Pentagon agencies control 80 percent of the national intelligence budget estimated at $40 billion a year.

Powell and Ridge said they expect a national intelligence director to make both [illegible]

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION NO: 05 00715

BEVERLY A. GEORGE

Plaintiff,

v.

AT&T CORP.

Defendant.

**PLAINTIFF'S MOTION FOR SPECIAL PROCESS SERVER**
**Pursuant to Mass.R.Civ.P. Rule 4(c)**

Now comes the plaintiff in the above-entitled matter and respectfully requests this Court to appoint Butler & Witten, Constables, 1895 Centre Street, Suite 202, Boston, MA 02132, as special process server in this matter. The plaintiff states that the Constables of Butler & Witten are disinterested parties and are over 18 years of age.

April 22, 2005
Motion allowed.
(Borenstein, J.)
Attorney DeLong
Asst Clerk

**BEVERLY A. GEORGE**
By her attorney,

David A. Conti, BBO# 661419
**BLAKE J. GODBOUT & ASSOCIATES**
33 Broad Street, 11th Floor
Boston, MA 02109
(617) 523-6677

Dated: April 21, 2005

A TRUE COPY

**COMMONWEALTH OF MASSACHUSETTS**

**NORFOLK, ss.**

**SUPERIOR COURT DEPT. OF THE TRIAL COURT**
**CIVIL ACTION NO. 05-00715**

BEVERLY A. GEORGE,
Plaintiff,

v.

AT&T CORPORATION,
Defendant.

**NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

TO: Clerk
Superior Court for Norfolk County
650 High Street
Dedham, Massachusetts 02026

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, a Notice of Removal (with attachments thereto) and a Notice to Opposing Counsel of Notice of Removal are being filed this day with the Clerk of the United States District Court for the District of Massachusetts. Copies of said Notice of Removal and a Notice to Opposing Counsel of Notice of Removal are attached hereto.

Respectfully submitted,

AT&T CORPORATION,

By its attorneys

Nathan L. Kaitz (BBO No. 252760)
Leah M. Moore (BBO No. 658217)
MORGAN, BROWN & JOY, LLP
200 State Street
Boston, Massachusetts 02109
(617) 523-6666

Date: May 24, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon counsel for Plaintiff, Blake J. Godbout, Esq., Blake J. Godbout & Associates, 33 Broad Street, 11th Floor, Boston, MA 02109, by first-class mail this 24th day of May 2005.

Nathan L. Kaitz

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPT. OF THE TRIAL COURT
CIVIL ACTION NO. 05-00715

BEVERLY A. GEORGE,
Plaintiff,

v.

AT&T CORPORATION,
Defendant.

NOTICE TO COUNSEL OF REMOVAL OF ACTION TO FEDERAL COURT

TO: Blake J. Godbout, Esquire
Blake J. Godbout & Associates
33 Broad Street, 11th Floor
Boston, Massachusetts 02109

PLEASE TAKE NOTICE that Defendant AT&T Corporation in the above-captioned matter, has on the 24th day of May 2005 filed in the United States District Court of the District of Massachusetts, its Notice of Removal of the above-styled action from the Superior Court, Norfolk County, Dedham, Massachusetts, (a copy of said Notice is attached hereto) to the United States District Court for the District of Massachusetts, at Boston, Massachusetts, together with copies of the Complaint filed by the Plaintiff in the Superior Court, Norfolk County, Dedham, Massachusetts.

You are also advised that said Defendant, upon filing said Notice, filed a Notice of Removal to Federal Court with the Clerk, Superior Court, Norfolk County, Dedham, Massachusetts, and attached thereto copies of the following: (1) Notice of Removal with exhibits

attached thereto; and (2) the Notice to Counsel of Removal of Action to Federal Court.

Such action has effected the removal of this action to the United States District Court for the District of Massachusetts, in accordance with the provisions of 28 U.S.C. §§ 1441 and 1446 and no further proceedings may be had in this state court action.

Respectfully submitted,

AT&T CORPORATION,

By its attorneys

Nathan L. Kaitz (BBO No. 252760)
Leah M. Moore (BBO No. 658217)
MORGAN, BROWN & JOY, LLP
200 State Street
Boston, Massachusetts 02109
(617) 523-6666

Date: May 24, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon counsel for Plaintiff, Blake J. Godbout, Esq., Blake J. Godbout & Associates, 33 Broad Street, 11th Floor, Boston, MA 02109, by first-class mail this 24th day of May 2005.

Nathan L. Kaitz

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

05 11079 DPW

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Beverly A. George

**(b)** County of Residence of First Listed Plaintiff Norfolk
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number) David Conti
Blake J. Godbout & Associates 617-
33 Broad St., Boston, MA 02109 523-6677

**DEFENDANTS**

AT&T Corporation

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known) Nathan L. Kaitz
Leah M. Moore
Morgan, Brown & Joy, 200 State St.,11th Fl., Boston, MA 02109 / 617-523-6666

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☒ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**): 28 U.S.C. Section 1441

Brief description of cause: Misrepresentation

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $83,700.00

CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE May 24, 2005

SIGNATURE OF ATTORNEY OF RECORD [signature: Nathan L. Kaitz]

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

05C 11079 DPW

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) George v. AT&T Corp.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

☐ I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

☒ II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.

*Also complete AO 120 or AO 121 for patent, trademark or copyright cases

☐ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

☐ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

☐ V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

None

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☐ NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

YES ☐ NO ☒

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐ NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐ NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES ☐ NO ☒

A. If yes, in which division do all of the non-governmental parties reside?

Eastern Division ☐ Central Division ☐ Western Division ☐

B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division ☒ Central Division ☐ Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

YES ☐ NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME Nathan L. Kaitz
Leah M. Moore

ADDRESS Morgan, Brown & Joy, LLP, 200 State St., 11th Fl., Boston, MA 02109

TELEPHONE NO. (617) 523-6666

(Coversheetlocal.wpd - 10/17/02)