UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------x

BEVERLY A. GEORGE,

                Plaintiff,

    v.                                                       Civil Action No. 05-11079-DPW

AT&T CORP.,

                Defendant.

---------------------------------------------------------------x

**DEFENDANT'S REPLY MEMORANDUM TO PLAINTIFF'S
MEMORANDUM IN OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT**

NOW COMES Defendant AT&T Corp. (the "Defendant") and files this Reply Memorandum to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment. In its Reply, Defendant will address only some of the arguments made by Plaintiff in her opposition. As to the arguments not addressed herein, Defendant relies on the arguments it previously advanced, as it does on all arguments.

    **A.    DEFENDANT HAS SPECIFICALLY AND CLEARLY IDENTIFIED
           THE PROVISION IN THE COLLECTIVE BARGAINING
           AGREEMENT DIRECTLY APPLYING TO HER CLAIM**

Contrary to the assertions in her Opposition, Defendant has specifically and clearly identified the provision of the collective bargaining agreement which directly applies to her misrepresentation claim, namely Section 6(a) of Article 25 of the agreement. Section 6(a) provides that an employee who leaves the defendant's employ "voluntarily without inducement" is not entitled to termination payments. There can be

no question that Plaintiff is claiming that she did not leave Defendant's employ voluntarily but, rather, was wrongfully induced to leave by Defendant's alleged misrepresentations.[1]

By way of her tort claim, Plaintiff is seeking termination payments spelled out in and controlled by the collective bargaining agreement. Her entitlement to such payments requires interpretation of the agreement and is subject to uniform federal law. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202 91985); *Gibson v. AT&T Technologies,* 782 F.2d 686 (7th Cir. 1986).

### B.  PLAINTIFF COULD HAVE FILED A TIMELY GRIEVANCE UNDER THE COLLECTIVE BARGAINING AGREEMENT

Plaintiff argues in her opposition that the time limits of the collective bargaining agreement did not provide her a remedy under the contract. She makes this claim by suggesting that the 60-day contractual time limit for filing her grievance began to run on the dates in June and July when the alleged misrepresentations occurred. Defendant submits that Plaintiff is misconstruing the date of her claim simply in order to argue futility.

Defendant submits that the 60-day time limit began to run on or about September 13, 2004 when it announced the workforce reduction and VTP offer. Until that point in time, there was no issue of termination payments under Article 25 of the agreement. There was no grievable issue until the Defendant made the VTP offer, an offer to which Plaintiff was not entitled because of her earlier retirement.

---

[1] At the very least, and contrary to Plaintiff's assertions, a bona fide dispute exists concerning the meaning of Section 6(a). In fact, the parties are not in agreement as to the meaning of Section 6(a) of Article 25 of the contract. (See last sentence of first paragraph of Plaintiff's letter of November 16, 2004. A. 30)

Plaintiff makes clear that she knew of the VTP offer by early October, 2004.[2] See ¶17 of her Response to Defendant's Statement of Undisputed Material Facts and her Affidavit.[3] Thus, Plaintiff had a significant amount of time available to her to file a timely grievance (or have Local 1051 file a timely grievance on her behalf). However, Plaintiff did not write Local 1051 until November 16, 2004,[4] and a grievance on her behalf was not filed by Local 1051 until December 9, 2004, well beyond the contract's 60-day time limit.

In her opposition, Plaintiff suggests that the Union somehow breached its duty of fair representation to her because it agreed with the Defendant's position that the grievance was untimely. First, Plaintiff has never filed a breach of duty claim against her Union. Second, no breach of duty exists simply because the Union after careful review agreed with the Defendant that the grievance was untimely.[5]

### C.  DEFENDANT'S PREEMPTION ARGUMENT DOES NOT FAIL BECAUSE PLAINTIFF WAS A RETIREE

Plaintiff argues that as a retiree, she had no right or obligation to file a grievance under the collective bargaining agreement. Case law, however, demonstrates the fallacy of that argument. *Merk v. .Jewel Cos., Inc.*, 848 F.2d 761, 766 (7th Cir. 1988), *cert. denied* 488 U.S. 956 (1988). *See also Gibson v. AT&T Technologies, supra.* While Defendant included a comment when denying the grievance that it did not generally accept grievances from retirees, this clear secondary basis for Defendant's initial denial

---

[2] Defendant submits that this evidence is inconsistent with her deposition testimony in which it appears that she knew of the VTP offer at the time it was made. See A. 3. Nevertheless, this inconsistency is immaterial as Plaintiff still had more than ample opportunity to file a timely grievance through Local 1051 of the CWA.
[3] While the grievance listed the date of the incident as July 16, 2004, and Local 1051 apparently accepted that as the incident date, the grievance was still filed more than 60-days after the VTP offer.
[4] The letter was received by Local 1051 during the last week of November. A. 43.
[5] Note that Plaintiff never urged the Union to accept the timeliness of her claim because of any delay on her part in learning of the VTP offer.

3

of the grievance does not diminish its preemption claim, particularly where Local 1051 filed a grievance on Plaintiff's behalf and never refused to pursue the grievance further because of her status as a retiree.

### D. PLAINTIFF HAS NOT ESTABLISHED A DISPUTED ISSUE OF FACT CONCERNING WHEN THE DOWNSIZING DECISION WAS MADE

Contrary to Plaintiff's assertions, she has not offered <u>any</u> evidence to establish or even suggest that the decision to downsize announced on September 13, 2004 was somehow made by May, June or early July of 2004. Instead, Plaintiff relies on the timing of a decision to close an operator service office in September of 1994, a full <u>ten</u> (10) years before the announcement at issue herein. That decision ten (10) years earlier does not create a past practice or a disputed issue of fact as to when the workforce reduction decision was made.

Nor can a disputed issue of fact arise from the decision to sell the Fairhaven building and lease a smaller portion of space from the new owner.[6] On the contrary, the undisputed facts (accepted as such by Plaintiff in her response) establish that the smaller space would still be more than sufficient for the number of employees employed <u>before</u> the September, 2004 workforce reduction. Indeed, at the time of the announcement, Joan Gallagher Cappuccio was scheduled to attend a meeting to discuss build out plans for the new space which included the number of employees employed <u>before</u> the September, 2004 workforce reduction.

---

[6] A disputed issue of fact also does not arise from Mary Eustace's deposition testimony. While she testified that an announcement of some kind was expected in September, she did <u>not</u> testify or suggest that she or anyone else knew an announcement was coming at the time of her alleged misrepresentations in May or June of 2004. Plaintiff is simply attempting to take some rather innocuous comment from Ms. Eustace and stretch it far beyond its appropriate reach.

4

Finally, statements made by Defendant concerning the general state of the business in the first half of 2004 are not "sufficient for a jury to find that the decision to reduce the workforce at the Fairhaven facility was made prior to Eustace and Cappuccio's statements." Generalized statements about the possible consequences of regulatory decisions do not establish any framework by which a jury can make such a finding.[7]

For these reasons, as well as those expressed previously, Plaintiff's misrepresentation claims must be dismissed. *Rodowicz v. Mass.. Mutual Life Ins. Co.,* 279 F.3d 36 (1st Cir. 2002).

### E.   CONCLUSION

Based upon the forgoing, the arguments previously advanced, and the entire record, Defendant AT&T respectfully requests that its motion for summary judgment be granted and the complaint be dismissed in its entirety.

Dated: April 4, 2006    AT&T Corp.,

By its Attorneys,

   /s/ Nathan L. Kaitz   
Nathan L. Kaitz (BBO#256760)
Morgan, Brown & Joy, LLP
200 State Street, 11th Floor
Boston, MA 02109
(617) 523-6666

---

[7] Indeed, if these general statements reached the import suggested by Plaintiff in her opposition, then a finding should be made that it was unreasonable for Plaintiff to rely upon the statements of her local managers.

**Certificate of Service**

      I hereby certify that a copy this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), including counsel for plaintiff, Blake J. Godbout & Associates, 33 Broad Street, 11th Floor, Boston MA  02109 and paper copies will be sent to those indicated as non-registered participants on this 4th day of April, 2006.

                                                                                       /s/ Nathan L. Kaitz
                                                                                        Nathan L. Kaitz